IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BALOISE INSURANCE LTD. et al.,** | : | |
| *Plaintiffs*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA TRUCK LINES, INC.,** | : | **No. 16-3813** |
| *Defendant*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                             JANUARY 12, 2017

      Plaintiffs Baloise Insurance Ltd. and AXA Versicherung AG filed this action following Defendant Philadelphia Truck Lines, Inc.'s ("PTL") alleged failure to refrigerate a shipment of human growth hormone during transit, which damaged the product. PTL moved to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies PTL's motion to dismiss and deems PTL's motion to exclude moot.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Plaintiffs allege that PTL did not properly refrigerate a shipment of human growth hormone and, as a result, ruined the product. This dispute centers on the second leg of a shipment arranged by Spedition F.R.E.I.T.A.N. GmbH ("FREITAN")[1]—transportation of the product from Philadelphia International Airport to Mechanicsburg, Pennsylvania by PTL. The product was delivered by British Airways to Philadelphia International Airport under an air waybill on or about Friday, August 15, 2014. Plaintiffs allege the air waybill did not cover

---

[1] Sandoz GMBH owned the product and hired FREITAN to arrange transportation from Austria (through Frankfurt, Germany) to Mechanicsburg, Pennsylvania. Plaintiff Baloise is a Swiss corporation and the subrogated underwriter of Sandoz. Plaintiff AXA is a German corporation that insured FREITAN. Baloise insured the shipment and paid sums under its policy for Sandoz for the damaged product. Baloise and FREITAN settled the claim between them for 50% of the value of the product, which was paid by AXA. AXA seeks to recover the settlement monies it paid to Baloise on FREITAN's behalf. Baloise brings this action to recover the balance of the product's value.

inland movement.  PTL then delivered the product to Mechanicsburg on or about August 19, 2014.  Plaintiffs allege that the second leg of the trip was subject to a separate agreement—facilitated by PDA International Logistics—between FREITAN and PTL.  Plaintiffs allege that on or about August 20, 2014, shortly after delivery of the damaged product, PDA International Logistics complained in writing to PTL on behalf of Sandoz/FREITAN and that following an investigation, PTL admitted that it failed to maintain the product at the proper temperature.

Plaintiffs filed a complaint on July 13, 2016, and later filed an Amended Complaint on August 29, 2016.  In the Amended Complaint, both Plaintiffs allege Breach of Contract (Counts One and Five); Breach of Bailment (Counts Two and Six); Negligence/Gross Negligence (Counts Three and Seven); and alternative causes of action for Breach of Contract and/or Duties under the Montreal Convention (Counts Four and Eight).  AXA separately alleges Indemnity (Count Nine).  PTL moved to dismiss the complaint on September 12, 2016, and the Court heard oral argument on the motion on December 12, 2016.

## II.  LEGAL STANDARD[2]

PTL moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint, contending that it fails to state a claim upon which relief can be granted. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in

---

[2] There is some disagreement over how the Court should view PTL's motion to dismiss and whether it should be converted to one for summary judgment.  PTL attached documents pertaining to the shipment to its motion to dismiss.  Plaintiffs also attached supplemental materials to their response in opposition in the event that the Court exercised its discretion pursuant to Fed. R. Civ. P. 12(d) to treat the motion to dismiss as a motion for summary judgment based on PTL's attached documents.  Included with Plaintiffs' response in opposition was an expert report from Warren Jones.  On November 22, 2016, PTL filed a motion to exclude the report.
   A court may convert a motion to dismiss to one for summary judgment where matters outside the pleadings are presented to, and not excluded by, the court, and the court satisfies necessary notice requirements.  *See In re Rockefeller Ctr. Properties, Inc. Securitites Litig.*, 184 F.3d 280, 287–88 (3d Cir. 1999) (explaining the process and requirements for converting a motion to dismiss).  Some narrowly defined materials outside the pleadings may be considered without triggering conversion.  *Id.*  The Court declines to convert PTL's motion to dismiss to a motion for summary judgment and will not consider the materials appended by either party as they do not fall squarely into the narrow category of materials that may be relied upon without conversion.  Consequently, PTL's motion to exclude is deemed moot.

the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 264 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). When evaluating the merits of a motion to dismiss, the Court is looking for "something more than a mere possibility of the claim as alleged"; the plaintiff must have alleged in his complaint "enough facts to state a claim to relief that is plausible on its face." *See Alston v. Wenerowicz*, 167 F. Supp. 3d 714, 716 (E.D. Pa. 2016) (quoting *Twombly,* 550 U.S. at 570); *accord McAndrew v. Deutsche Bank Nat. Trust Co.*, 977 F. Supp. 2d 440, 444 (M.D. Pa. 2013) ("[T]he plaintiff must allege facts that 'justify moving the case beyond the pleadings to the next stage of litigation.'") (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)). The Court is bound to accept all allegations in the Amended Complaint as true and draw all reasonable inferences in favor of Plaintiffs in determining whether the motion should be granted, but the Court must disregard "naked assertions" or conclusions as to the requirements of the law that are couched as factual assertions. *See Ciferni v. Boilermakers Local 13*, 158 F. Supp. 3d 263, 267 (E.D. Pa. 2016).

**III.     DISCUSSION**

PTL takes two positions in its motion to dismiss. First, that Plaintiffs' state law causes of action are wholly preempted by either the Montreal Convention or the Carmack Amendment. Second, that Plaintiffs have failed to allege or evidence compliance with the Montreal Convention's prefatory requirement that claims be timely filed in writing. Plaintiffs contend that neither the Montreal Convention nor the Carmack Amendment applies, and they have properly pleaded their state law claims. They urge that if the Court determines that the Montreal Convention does apply, they satisfied its prefatory requirements. Because PTL did not move to

dismiss Plaintiffs' state law claims explicitly and the Carmack Amendment appears not to apply to this case,[3] the Court will focus its attention on the threshold issue raised by the parties in their briefing and at oral argument—the applicability of the Montreal Convention.

The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000) ("Montreal Convention") is an international treaty that governs the rights and responsibilities of international air carriers. *See* Art I, ¶ 1. The Montreal Convention supersedes and replaces the previous Warsaw Convention. *See Sompo Japan Ins. Co. v. Nippon Cargo Airlines Co.*, Ltd., 522 F.3d 776, 779–781 (7th Cir. 2008) (discussing the history of the Warsaw and Montreal Conventions). It covers "all international carriage of persons, baggage or cargo performed by aircraft for reward." Art I, ¶ 1. "International carriage" is defined in the Montreal Convention as "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties. . . ." Art I, ¶ 2.

The Amended Complaint alleges that FREITAN was hired "to arrange air and land transportation of a shipment of temperature sensitive Biopharmaceuticals from Austria to Mechanicsburg, Pennsylvania." Compl. 7. Use of multiple carriers does not necessarily remove a shipment from the Montreal Convention's purview. *See* Art. 1, ¶ 3. On this basis, PTL urges that even if the shipment at issue in this case involved multiple contracts, it comprised a single,

---

[3] PTL does not explicitly challenge whether Plaintiffs properly pleaded their state law claims and instead focused its efforts on analyzing whether the Montreal Convention or Carmack Amendment preempts them. With regard to the Carmack Amendment, PTL first argues that it does not apply because it governs domestic (not foreign) shipments, and later argues in the alternative that the Carmack Amendment applies and wholly preempts Plaintiffs' state law claims. Plaintiffs agree that the Carmack Amendment does not apply because it specifically excludes motor transportation that "has or will be transported by an air carrier or . . . by a foreign air carrier." 49 U.S.C. § 13506(a)(8)(B).

undivided operation under the air waybill facilitated by FREITAN and is therefore subject to the Convention.

Plaintiffs argue that the air waybill is not the governing contract and rather, the separate ground transport bill of lading issued by PDA International to PTL governs the portion of transport at issue. Claims for damage done to cargo are addressed by Article 18 of the Convention, which states that "[a] carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Art 18, ¶ 1. Plaintiffs urge that "carriage by air" is defined as "the period during which the cargo is in the charge of the carrier," which they interpret as actual or constructive possession pursuant to the carriage contract. Art 18, ¶ 3. They point to an Explanatory Note to Article 18, which states that the Convention applies "whenever and wherever the cargo is in the possession custody or charge of the carrier, whether on or off the airport premises." Ch. III. Art. 18, ¶ 3. They argue that since the cargo was damaged when in control of PTL, not British Airways, it did not occur when it was in charge of the air carrier and is not subject to the Convention. PTL observes that damage done to cargo during transshipment while in the performance of a contract by air is presumed to have taken place during the carriage by air. *See* Art. 18, ¶ 4.

It is clear from the briefing and oral argument that the parties disagree over the applicability of, and relationship among, the various contracts at play in this action. PTL urges this Court to find the air waybill determinative. However, the Plaintiff has alleged that a separate contract outside the air waybill governs this dispute. The Court will not, at this stage of the

5

proceedings, dismiss this action on the basis of the Montreal Convention when its applicability is not clearly established.[4]

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

---

[4] Likewise, the Court will not determine at this stage of the proceedings the preemptive effect of the Montreal Convention or whether Plaintiffs have complied with any prefatory requirements under it.